Welch, J.
We can not regard the bill of exceptions. No motion for a new trial was made below, nor did the court pass upon any issue of fact. The case can not, therefore, be reviewed on the facts. This is immaterial, however, as there are no real issues of fact made by the pleadings, and they admit all that is set out in the bill of exceptions; the replies, so called, being mere conclusions of law, or repetitions of matter admitted in the answer. The case is made in the pleadings, and we can look to them alone.
The plaintiffs claim under a will, duly probated, and clearly entitling them to _ have this land sold for their benefit, unless their right of action is barred by the matters set up in defense. These matters, though nominally seven in number, are really but two: 1. The decree setting aside the will; 2. The twenty-one years’ possession of Lamb. The first of these defenses only was passed upon by the district court. If, however, we should be of opinion that the court erred in sustaining that defense, before we can hold the ei-ror to be prejudicial to the plaintiffs, we must go further, and find the second defense also to be insufficient. Because, if the record shows any good defense, the plaintiffs have not been injured. Whether it does show any such defense is the question to be con.sidored. Was the decree a good defense? And, if it was not, have 4ho plaintiffs lost their rights by the long-continued possession?
The proceeding to contest the will was governed by the “ act re *355 lating to wills,” of the 11th February, 1824. Chase Stat 1305. It is admitted that by the provisions of that act the will, whenever probated, became, and forever remained a valid will, binding upon all persons, until set aside agreeably to the provisions of the 18th section of the act. That section is as follows:
“ Seo. 18. That if any person interested shall, within two years after probate had, appear, and by bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the last will of the testator or not, which shall be tried by a jury, whose verdict shall be final ^between the parties, saving to the court the power of granting a new trial, as in other cases; but if no person appear in that time, the probate shall be forever binding, saving, also, to infants, married women,” etc., “the like period after the removal of their respective disabilities.”
Was the will set aside agreeably to the requirements of this section ? The proceeding for that purpose was commenced within the time named, “two years;” it was in the prescribed form, “by bill in chancery;” and by the proper party, “a person interested.” But it is objected that there was no verdict of a jury, and that without such verdict the court could not rightfully set the will aside by mere decree; or, if the verdict of a jury was not necessary, then it is objected that the decree only binds those who were parties to the proceeding. We think these objections are both well taken. The statute declares that the “ verdict shall be final between the parties.” This language can not easily be misunderstood. Labored arguments, as to the distinctions between actions in rem and actions in personam, and between courts of general and courts of special jurisdiction, shed but little light on these plain words. The statute makes nothing final but a “verdict,” and it makes that verdict final only “ between the parties.” Until such verdict is rendered, agreeably to the statute, the probate of the will is a finality. When so rendered, the verdict, and not the decree, becomes a finality. That is to say, the verdict becomes conclusive evidence of its own truth between the parties to the proceeding. The verdict of a jury is the only instrumentality given by which to invalidate or set aside the probate. Whether the omission of a jury in such case renders the decree void, or merely voidable by direct proceeding to reverse it, need not now to be determined. That it would at least render it voidable, was expressly decided in Walker v. Walker, 14 Ohio St. 157. But whatever effect may be given to the decree — or *356 to the verdict of a jury in such case — we have no hesitation in saying that that effect must be confined to “ the parties ” in the cause. The words “the parties,” in the section quoted, can have no other legitimate meaning than that of parties to the proceeding. *This is their primary legal meaning, and that such is their import here is quite obvious from their being used in connection with the subject of a “bill in chancery,” which, of itself, implies proper parties. That meaning is made still more obvious from the fact that to give-the words any other meaning would do injustice by depriving persons in interest of a day in court. The meaning can not be parties in interest, because such had been spoken of before as “ persons interested.” And 'in the subsequent clause, where the effect of the probate is declared, it is said it “ shall be forever binding,” without naming any parties upon whom it is to be so binding. If the same meaning was intended in both places, why were different forms of expression employed? Why use the words “between the parties ” in the one case, and omit them in the other ? It seems to us quite plain that it was because the intention was to express what, in fact, ought to be implied in all proceedings in “ chancery,” that none but “ the parties ” to the proceeding were to be bound thereby. Indeed, the counsel for Lamb seem to rest thoir whole defense upon an implication arising from the fact that the proceeding was “in chancery.” It is alone from this fact that they imply the power of the court to render a decree. That implication, however, can be no stronger than the implication that only parties are to be bound by the decree. The defendant is in this dilemma: if the proceeding was not in chancery, then there was no power to render the decree, and the statute, not having been strictly pursued, the whole proceeding is void; but if the proceeding was in chancery, so that we may imply a power to render the decree, then it binds none but parties. So that, whether the proceeding was in chancery or in rem, the plaintiffs are not bound by the decree.
Is there anything in the other defense, twenty-one years adverse possession ? The argument is that the right of the plaintiffs is in in the nature of a remainder, and therefore accrued immediately upon the determination of the life estate of George, by the rendition of the decree. If this be true, the statute of limitation is well pleaded. But if their right first accrued upon the death of George Stevenson, it will hardly be contended that the statute is any bar. *357 Nor can it be seriously ^contended that tbeir rights could, in that case, be in any manner affected by an adverse possession during the life of George Stevenson. Such possession would he either in the right of George Stevenson, or it would be an ouster of him, and could only affect the life estate.
Conceding then that the decree avoided the will as to George 'Stevenson, and thereby determined his life estate, hut left the will in full force as to the plaintiffs, did the right of the latter immediately accrue? We answer in the negative. Undoubtedly the law of remainder is, that it begins as soon as the life estate is at an end, even though it be in the lifetime of the tenant for life. But this is no remainder. It is an equitable right to have the land sold, or, at their election, to have the land itself, upon the death of George Stevenson. It was not what remained of the estate after carving out a particular estate, but an estate or right to commence upon the happening of a particular event, which might, or might not he coincident with the determination of the particular estate. The plaintiffs’ right, therefore, never accrued till 1863, the date of ■George’s death.
It seems to me that there is another answer to this defense, to be found in the doctrine of the mutuality of estoppels. The decree setting aside the will, if binding at all, was binding only “ between the partiesand it binds those parties by way of estoppel. Although the will may be in fact a lawful, valid will, the parties to the decree are estopped by it from asse?'ting or proving it to be such will. But the plaintiffs are not so estopped. As to them, it is a valid and subsisting will. They are still estopped by the probate from denying that it is such will. It is to them as though the chancery case had never been commenced. Their rights stand wholly unaffected by the proceeding. As they could lose nothing by it, so they could gain nothing by it. If George’s life estate fell by that proceeding, it fell into other hands than theirs — it fell, by -estoppel, into the hands of the other “ parties ” to the proceeding — the heirs at law of the testatrix. Had the plaintiffs sought to recover the land during the lifetime of George Stevenson, they must have asserted their claim to the remainder under the will, and their claim to the life estate in avoidance *of the will. They would have had to plead that there was a will, and that there was not a will, in the same action. This no party is allowed to do. George could as well, in such an action, have estopped them from *358 denying the will, as they could have estopped him from setting it up. As between them and him, the only mutual estoppel is found in the probate of the will, which, being a proceeding in rem, binds all parties in interest. As between George and the heirs, he is estopped by the proceeding in chancery from setting up the will, and is compelled to admit, that whatever the will attempted to give to him has descended to them, and thus his life estate has passed into their hands, by estoppel, and not into the hands of the plaintiffs.
We are of opinion, therefore, that the district court erred to the plaintiffs’ prejudice in sustaining said demurrer, and in rendering judgment against the plaintiffs.

Judgment reversed, and cause remanded for further proceedings.

Day, C. J., and White, Brinkerhoff, and Scott, JJ., concurred.